MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Jared C. Kimball
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 14 2014

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 14-CR-21-RMP-10 |
| vs. | Plea Agreement |
| SAMUEL G. WARD, | Rule 11(1)(c)(1)(C) |
| Defendant. | |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney, for the Eastern District of Washington, and Jared C. Kimball, Assistant United States Attorney for the Eastern District of Washington, and Defendant SAMUEL G. WARD and the Defendant's counsel, Mr. Ronald A. Van Wert, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant SAMUEL G. WARD, agrees to plead guilty to a Superseding Information charging the Defendant with one count of Distribution of Oxycodone Hydrochloride, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), which carries a maximum penalty of not more than twenty years imprisonment, not less than three (3) years nor more than life term of supervised release, not more than a $1,000,000 fine, and a $100 special penalty assessment.

Plea Agreement- 1
P40604dd.JKA

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>Denial of Federal Benefits:</u>

The Defendant understands that by entering this plea of guilty, he is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. *See 21 U.S.C. § 862a*. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. *See 21 U.S.C. § 862*.

3. <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant.

The Defendant acknowledges that although this Plea Agreement is entered pursuant to Fed. R. Crim. P. Rule 11(c)(1)(C), wherein the United States and the Defendant agree to recommend to the Court a sentence of incarceration of forty-eight (48) months, no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter.

The Defendant and the United States understand that the Defendant has the option to withdraw from this Plea Agreement and to withdraw his guilty plea if the Court imposes a sentence of incarceration higher than forty-eight (48) months. Additionally, the Defendant understands that the United States has the option to withdraw from this Plea Agreement if the Court imposes a sentence of incarceration

Plea Agreement- 2
P40604dd.JKA

less than forty-eight (48) months. The amount of supervised release that the Court imposes is not a part of the 11(c)(1)(C) nature of this Plea Agreement.

4.  Waiver of Constitutional Rights:

The Defendant understands that, by entering this guilty plea, he is knowingly and voluntarily waiving certain constitutional rights, including:

(a.) the right to a jury trial;

(b.) the right to see, hear and question the witnesses;

(c.) the right to remain silent at trial;

(d.) the right to testify at trial; and,

(e.) the right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands that he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that all pretrial motions currently pending before the Court, if any, are waived.

5.  Elements of the Offenses:

The United States and the Defendant agree that, in order to convict the Defendant of Distribution of Oxycodone, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C), as charged in Count 1 of the Superseding Information, CR-14-21-RMP-8, the United States would have to prove the following elements beyond a reasonable doubt on each specific count:

Count 1:    *Distribution of Oxycodone Hydrochloride, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C):*

*First*, during a period of time intervening October 1, 2013, through March 19, 2014, in the Eastern District of Washington, SAMUEL G.

Plea Agreement- 3
P40604dd.JKA

>WARD did knowingly and intentionally distribute Oxycodone Hydrochloride, an opiate and Schedule II controlled substance, listed at 21 U.S.C. § 812(c), specifically in the form of pills; and,
>
>*Second*, SAMUEL G, WARD, knew that it was Oxycodone Hydrochloride, an opiate, in the form of pills, or some other prohibited drug

6. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for SAMUEL G. WARD'S guilty plea. Pertinent facts are set out below in order to provide a factual basis for the pleas and to provide facts which the Government and Defendant believe are relevant for computing the appropriate guideline range. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

On November 7, 2013, at approximately 1:23 p.m., FBI intercepted an outgoing telephone call (Call No. 2144) from Target Telephone 1, believed to be used by Deandre Gaither, to telephone number (509) 995-4419, believed to be used by Samuel Ward. During Call No. 2144, Gaither and Ward were discussing the sale of Oxycodone pills, specifically those pills stamped with a "K9", "M", and "A." In this call Gaither is discussing how Ward will continue to help him sell the Oxycodone pills which Kory Hall, aka "BG," has fronted to Gaither. Gaither needs to pay "BG" between four to five thousand dollars for the pills so "BG" will leave Spokane, Washington. Gaither tells Ward *"Yeah, help me finish that fades. I got another hundred. Seriously, seriously, I got another hundred for you fast, you gotta work fast.*

Plea Agreement- 4
P40604dd.JKA

*I'm tryin to have this nigga, I'm tryin to have this nigga leave with like four thousand so then he can just leave and I can take the rest, I could, we'll just our time on the rest, you know what I'm sayin?"* This call provides that Ward already has one hundred pills and Gaither wants him to sell them fast so he can give Ward another one hundred pills to continue selling.

On November 27, 2013, at approximately 12:26 a.m., FBI intercepted an incoming telephone call (Call No. 125) to Target Telephone 2, believed to be used by Jason Jones, from telephone number (509) 995-4419, used by Samuel Ward. During Call No. 125, Ward tells Jones that Ward was "shorted" two prescription pills because Ward only has 268 pills instead of 270. Jones says to Ward *"You stole 'em, your bitch stolen 'em, you dropped 'em. I don't know what happened. I want my money nigga.' I want my money. I want my money nigga."* Jones denied shorting the pills and claims that Ward dropped the pills or his girl or "bitch" probably took them. Jones demands the money for these pills which were fronted to Ward and Jones claims the price went up to $27.00 per pill.

On December 15, 2013, at approximately 10:19 a.m., FBI intercepted an outgoing telephone call (Call No. 1755) from Target Telephone 2, believed to be used by Jason Jones, to telephone number (509) 701-0771, believed to be used by Samuel Ward. During Call No. 1755, Jones and Ward are discussing money from the sale of illegal drugs. Jones is checking on Ward's status and when Ward will have the money (drug proceeds) for Jones. Ward is waiting for money from a customer who will *"cash me out"* and Ward is unable to get his money until the next day because the funds are not available due to a bank transfer. Ward states that he will bring the money to Jones once he has all of the money and Ward offers in the alternative to bring part of the money he owes Jones now.

On November 16, 2013, at approximately 3:14 p.m., call no 4542, Gaither tells Ward he just delivered *"beans"* or Oxy pills to "Kenny and Jon B" or (i.e., Kenneth Budik and Sean Lambert). Gaither further explains to Ward that he only had 44 pills

Plea Agreement- 5
P40604dd.JKA

left and needs to pick up another 500 pills, so he gave pills to "Kenny and Jon B" so Gaither could get money to pay for the additional 500 pills he intends to pick up.

Pen Trap/Trace data revealed approximately three hundred and eighty (380) contacts during the period of July 25, 2013, through November 7, 2013, between Target Telephone 2 (TT2) and (509) 995-4419, the cellular telephone believed to be used by Samuel G. Ward. Telephone (509) 995-4419 is a cellular telephone serviced by AT&T, which was activated on or about January 26, 2012, and subscribed to by another individual. Of the 380 total contacts between TT2 and (509) 995-4419, approximately two hundred and four (204) were incoming contacts to TT2, and approximately one hundred and seventy six (176) were outgoing contacts from TT2. Of the 380 total contacts between TT2 and (509) 995-4419, approximately five (5) were incoming Text/SMS messages to TT2, and approximately twenty three (23) were outgoing Text/SMS messages from TT2. The last captured Text/SMS message was an outgoing Text/SMS message from TT2 to (509) 995-4419 on November 13, 2013. The last captured call was an outgoing call placed from TT2 to (509) 995-4419 on November 13, 2013;

During the investigation the Oxy pills purchased from Gaither and other co-conspirators were confirmed by the DEA Laboratory as containing Oxycodone Hydrochloride, a Schedule II Controlled Substance. The events described above occurred in the Eastern District of Washington, specifically, Spokane, Washington.

7.   The United States Agrees:

   a)   Dismissal(s):

At the time of sentencing, and in consideration of the terms of the instant Plea Agreement regarding the Superseding Information, the United States agrees to move to dismiss SAMUEL G. WARD from Count 2 and Count 3 of the Indictment, CR-14-21-RMP-10, which charges the Defendant with two counts of Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 846.

   b)   Not to File Additional Charges:

Plea Agreement- 6
P40604dd.JKA

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment unless the Defendant breaches this Plea Agreement any time before or after sentencing.

8.  **United States Sentencing Guideline Calculations:**

The Defendant understands and acknowledges that the 2014 United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable advisory Guidelines sentencing range at the time of the sentencing hearing.

(a). *Base Offense Level:*

The United States and the Defendant submit that the Defendant's base offense level is twenty-six (26) based on the amount of Oxycodone Hydrochloride involved in the Defendant's relevant conduct, that being an equivalency of at least 400 kilograms but less than 700 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(6).[1]

(b). *Relevant Conduct:*

The United States and the Defendant agree and stipulate that the *equivalency* in Oxycodone Hydrochloride of more than 400 kilograms but less than 700 kilograms of marijuana was distributed in furtherance of the criminal activity undertaken by the Defendant; that this amount was reasonably foreseeable to/undertaken by the Defendant, and that the Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. § 1B1.3.

(c). *Acceptance of Responsibility:*

---

[1] One gram of pure Oxycodone = 6,700 grams of marijuana; 400-700 kilograms marijuana which is placed at offense level (26). *See U.S.S.G. §§ 2D1.1(c)(6), 2D1.1Commentary Note 8 (d).*

Plea Agreement- 7
P40604dd.JKA

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than November 14, 2014, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d).    *Final Offense Level:*

The United States and the Defendant submit that the Defendant's final offense level is twenty-three (23).

(e.)    *Criminal History:*

The United States and the Defendant understand that the Defendant's criminal history computation will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant acknowledge and agree they have made no agreement and make no representations as to the Defendant's applicable criminal history category.

(f).    *Departures:*

Plea Agreement- 8
P40604dd.JKA

The Defendant and the United States agree that there are no aggravating or mitigating circumstances (Specific Offense Characteristics) in this matter. Therefore, neither party will seek an upward or downward departure/variance from the final and applicable U.S.S.G. range.

9. Incarceration and Supervised Release:

The United States and the Defendant agree to recommend forty-eight (48) months of incarceration. The United States agrees to recommend that the sentence imposed in this case run concurrently to the state sentence imposed in Spokane Superior Court Cause Number SC 14-1-02595-6. The United States and the Defendant further agree to recommend three (3) years supervised release.

10. Criminal Fine/Restitution:

The United States is not seeking a monetary fine in this case because the Defendant does not have assets or funds to satisfy a fine.

11. Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

12. Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

13. Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the

Plea Agreement- 9
P40604dd.JKA

Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

14. <u>Waiver of Appeal and Collateral Attack Rights</u>:

In return for the concessions that the United States has made in this Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court imposes a sentence of forty-eight (48) months; imposes three (3) years supervised release; waives any fine; and imposes a $100 special penalty assessment. Should the Defendant successfully move to withdraw from this Agreement or should the Defendant's conviction on the Indictment be dismissed, set aside, vacated, or reversed, this Agreement shall become null and void; and the United States may prosecute the Defendant on all available charges involving or arising from his conduct. The Defendant further expressly waives his right to file any post-conviction motions attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based upon information not now known by the Defendant, and which, in the exercise of due diligence, could not be known by the Defendant by the time the Court imposes the sentence.

15. <u>Integration Clause</u>:

The Defendant and the United States acknowledge and agree that this document constitutes the entire Plea Agreement between the Defendant and the United States, and no other promises, agreements, or conditions exist between the Defendant and the United States concerning the resolution of this case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The Defendant and the United States acknowledge and agree that this agreement cannot be modified except in a writing that is signed by the Defendant and the United States.

Plea Agreement- 10
P40604dd.JKA

16.     Pending State Charges/State-Federal Custody Dynamics:

The Defendant is currently charged in Spokane County Superior Court under Cause Number (SC 14-1-02595-6). The Defendant and the United States agree that as a condition of the instant Plea Agreement, the Defendant will plead guilty on the abovementioned state cause (on two counts of that Information). The United States does not object to that state sentence running concurrent with the sentence in this federal matter. Failure by the Defendant to enter guilty pleas to this state matter will cause the instant Plea Agreement to become null and void and this matter would be re-set for trial.[2]

Further, and in consideration of the terms and benefits allowed for in the instant Plea Agreement, the Defendant waives any rights under the Interstate Detainers Act (specifically, anti-shuttling) so that he may be transported freely between federal and state custody by writ to achieve the ends of this Plea Agreement. *See 18 U.S.C. app. II, § 2, arts II, III.*

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORSMBY
United States Attorney

_____          11.12.14
Jared C. Kimball                              Date

---

[2] It is agreed by the parties that following the entry of a plea of guilty and sentencing in this Plea Agreement, the Defendant will be taken by *writ* into state custody to enter guilty pleas and to be sentenced on the state cause. The parties agree that the Defendant would then be returned by *writ* to federal custody for designation and processing by BOP and to serve his federal prison sentence.

Plea Agreement- 11
P40604dd.JKA

Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_Samuel Gene Ward Jr_　　　　　　　　_11-14-2014_
SAMUEL G. WARD　　　　　　　　　　　Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_[signature]_　　　　　　　　　　　　　　_11-14-2014_
Mr. Ronald A. Van Wert　　　　　　　　Date
Attorney for the Defendant

Plea Agreement- 12
P40604dd.JKA